```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                    :
KENTA RAYNARD MOORE,                :
                                    :
          Petitioner,               :   Civ. No. 21-15863 (NLH)
                                    :
     v.                             :   OPINION
                                    :
WARDEN DAVID ORTIZ,                 :
                                    :
          Respondent.               :
_____:
```

APPEARANCES:

Kenta Raynard Moore
09815-040
Fort Dix Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640

    *Petitioner Pro se*

Philip R. Sellinger, United States Attorney
John T. Stinson, Jr, Assistant United States Attorney
United States Attorney's Office for the District of NJ
401 Market Street, 4th Floor
Camden, NJ 08101

    *Counsel for Respondent*

HILLMAN, District Judge

    Petitioner Kenta Raynard Moore filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the disciplinary sanctions against him for possession of a hazardous tool: a cell phone.  ECF No. 1.  Respondent Warden Ortiz opposes the petition.  ECF No. 6.  For the reasons that follow, the Court will deny the petition.

I.  **BACKGROUND**

Petitioner challenges a disciplinary hearing that found him guilty of possessing a cell phone at FCI Fort Dix.  ECF No. 1.  According to Incident Report 3455011, Unit Officer T. Hodges found "1 black and blue cell phone with yellow tape covering a magnet attached to the back of the cell phone in the possession of inmate Tejada . . . in the B-Wing bathroom" on May 24, 2020.  ECF No. 6-1 at 8.  Federal Bureau of Prisons ("BOP") Central Office, Intelligence Section officials extracted data from the phone on October 6, 2020.  Id. at 24.

The extraction report, dated October 15, 2020, revealed that the phone was used to call a number with area code (917) on May 17, 2020 at "approximately 22:10 UTC/'Universal Time Coordinated' or 5:10 p.m. . . . ."  Id. at 8.  See also id. at 25.[1]  The extraction report indicated that the call to the 917 Number was answered and lasted for 6 minutes and 47 seconds.  Id.  "BOP compared that extracted data . . . , with information located in BOP's TRUINTEL/TRUVIEW system."  ECF No. 6 at 5.  According to the BOP, the 917 Number "belonged to an individual, B.C. in Brooklyn New York, who was linked to Moore."  Id.

---

[1] The phone numbers have been redacted from the incident and extraction reports.  The Court will refer to this number as the "917 Number."

2

B.C. "was on Moore's approved phone list to FCI Fort Dix since June 6, 2019, and on his list at two prior facilities; (2) was on Moore's approved email list since October 3, 2016; and (3) sent Moore 26 separate cash transfer payments to FCI Fort Dix between August 31, 2019 and October 19, 2020, in amounts ranging between $40 and $200." Id. During the investigation, Petitioner denied ever seeing the phone. ECF No. 6-1 at 19. According to the investigating officer, Petitioner "exhibited a poor attitude during the investigation." Id. The investigation concluded Petitioner possessed the cell phone and charged him with prohibited action 108 based on "the fact that inmate Moore is housed at FCI Fort Dix's Satellite Camp/Unit 6695 at the time the call was placed and the fact that inmate Moore is the only inmate at FCI Fort Dix connected to this number." Id. at 8. See also 28 C.F.R. § 541.3 (prohibiting possession of a hazardous tool, which includes "a portable telephone, pager, or other electronic device.").

Petitioner received a copy of the Incident Report and a Notice of Rights on December 3, 2020. ECF No. 6-1 at 8. He submitted a statement on December 7, 2020. Id.; id. at 12. He stated "[t]o my honest recollection there was a lot of movement of inmates [due] to the Covid pandemic we were being moved & isolated [from] one side to another . . . ." Id. at 12. "During that time I passed off my contact info to a few of my

3

religious brothers or guys I have got to know since being at Fort Dix just in case we got separated due to the pandemic." Id.  He included an example of his labels and speculated that someone "[lost] my label, and somebody else must of found one of my contact labels and tried to contact my people."  Id.

The Unit Discipline Committee ("UDC") concluded the charge should be referred to a Disciplinary Hearing Officer ("DHO") after reviewing the Incident Report and Petitioner's statement. Id. at 8.  See also 28 C.F.R. § 541.7(a)(4) (stating charges for Greatest or High severity prohibited acts will be automatically referred to a DHO).  Petitioner was informed of the DHO referral on December 7, 2020 and given a copy of his Notice of Rights. ECF No. 6-1 at 10-11.  Petitioner declined to have a staff representative assist him before the DHO.  Id. at 10.

DHO Jermaine Darden conducted a hearing on December 14, 2020.  Id. at 4.  Petitioner testified at the hearing, saying "I am not guilty, I passed my information to serval inmates in the dorm just in case we lost contact, I gave them my girlfriends information such as her name and number and address.  So either Loco or one of the brothers placed the contact in that phone.  I never possessed a phone."  Id. at 6.  DHO Darden also considered Petitioner's typed statement, a photograph of the cell phone, the incident and extraction reports, TRUVIEW, and the phone number center report.  Id. at 4-5.

4

DHO Darden concluded that Petitioner did not "present sufficient evidence to refute the charge." Id. at 7. He concluded Petitioner committed the prohibited act and "provid[ed] the DHO with some inaccurate information in order for you not [to] accept responsibility for your actions." Id. at 6. He noted: "In general, a person has constructive possession if they knowingly have ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located." Id. at 7. He sanctioned Petitioner with the loss of 41 days of good conduct time, loss of phone privileges for 365 days, and a $500 fine. Id.

Petitioner appealed the disciplinary sanctions. ECF No. 6-2 at 16. He argued the BOP failed to provide him with the UDC's written report within one business day. Id. He also argued the sanctions were excessive because it was his first incident report, that DHO Darden was "arrogant and unprofessional" and did not consider his written statement and evidence of printed address labels, and that he should have been charged with improper use of a telephone at most. Id. at 17. He also claimed that the loss of telephone privileges violated the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2) (2020), ("CARES Act"). Id.

The BOP Regional Director denied Petitioner's appeal. Id. at 18. "The DHO reasonably determined you committed the

5

prohibited act based on the following.  On December 3, 2020 the reporting officer reviewed a forensic report from a cellphone discovered within the secure perimeter of the institution on May 24, 2020 and discovered that a call was made from the phone to a phone number which is solely connected to you."  Id.  "The DHO considered your statement prior to rendering a decision."  Id.

    Petitioner appealed this finding to the BOP General Counsel.  He argued that "I was never found in possession of said contraband at anytime.  In my inmate response, I gave details to the best of my recollection of how that number could have got in that phone.  Honestly, I don't know.  But to assume that it was from me because of a number on my phone list is speculative and hypothetical."  ECF No. 1-1 at 15.  He also argued that he did not get a chance to examine the phone.  Id. at 16.  He again argued that the sanctions were excessive and violated the CARES Act.  Id.  He objected to the charge itself, stating "for all intents and purposes the 108 violation is an actual possession charge, which does not fit the actions described in the incident report.  This charge is based strictly on accusations, assumptions and hypotheticals."  Id.  The General Counsel's office denied the appeal.  ECF No. 6-2 at 20.

    Petitioner subsequently filed this § 2241 petition.

6

**II.   STANDARD OF REVIEW**

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973); see also Muhammad v. Close, 540 U.S. 749 (2004).  A prisoner challenging a disciplinary action resulting in the loss of good time credits may bring such claims under § 2241, "as the action could affect the duration of the petitioner's sentence."  Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (per curiam).

Title 28, Section 2243 of the United States Code provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition must be construed liberally.  See Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).

**III. DISCUSSION**

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct.  When such a statutorily

7

created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." Denny v. Schultz, 708 F.3d 140, 143-44 (3d Cir. 2013) (internal citations and quotation marks omitted).  In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974).  In addition to a hearing before an unbiased factfinder, inmates must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563-67).  When a procedural error is alleged in the context of a prison disciplinary proceeding, the Third Circuit Court of Appeals has held that "[i]n the absence of a showing of prejudice," the outcome of the proceeding should not be overturned. Griffin v. Warden, 640 F. App'x 181, 184 (3d Cir. 2016) (per curiam).

A.   Possession of a Hazardous Tool

Petitioner argues that he was inappropriately charged with violating Code 108 because Code 108 is limited to actual possession and does not extend to constructive possession.  ECF

8

No. 1-2 at 7.  "The incident report clearly states who was found in possession of said contraband. . . . Never once does the incident report state that Kenta Moore was in possession of said contraband."  ECF No. 7 at 4-5.  He asserts that he should have been charged with conduct that disrupts or interferes with the security or orderly running of the institution, Code 299, or misuse of a telephone, Code 297, at most.  ECF No. 1 at 8.  The Court interprets this argument as asserting there was insufficient evidence to sustain a violation of Code 108.

"[A] prison disciplinary decision need only be supported by 'some evidence' in order to satisfy due process."  Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (citing Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985)).  In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Hill, 472 U.S. at 455-56.  This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'"  McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting Hill, 472 U.S. at 455).  "Once the reviewing court determines

9

that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." Cardona v. Lewisburg, 551 F. App'x 633, 637 (3d Cir. 2014).

Code 108 prohibits the "[p]ossession, manufacture, introduction, or loss of a hazardous tool," which includes electronic devices such as cell phones. 28 C.F.R. § 541.3 (Table 1). There is no support for Petitioner's contention that Code 108 is limited to actual, physical possession. The Third Circuit has held that "[i]n the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged." Solomon v. Warden, FCI Fairton, 506 F. App'x 147, 149 (3d Cir. 2012). See also Denny, 708 F.3d at 145. Such an inference would be permissible here because the BOP limited the pool of potential suspects by doing a forensic search of the phone and comparing the numbers found on the phone with BOP records. See ECF No. 6-1 at 8.

There is no dispute that the phone in question was found in the physical possession of another inmate, but there is evidence in the record to support DHO Darden's finding that Petitioner possessed the phone before it was discovered. The 917 Number

10

found during the BOP's forensic search of the phone was identified as belonging to B.C., who only appeared on Petitioner's approved contact list. Id.  B.C. also sent money to Petitioner on a few occasions. Id. at 27.  Moreover, the fact that the May 17, 2020 call was answered and lasted for almost 7 minutes further supports the inference that B.C. knew the caller. Id. at 25.

Petitioner does not dispute these facts but argues there is an alternative reason for B.C.'s number being on the phone, namely that another inmate called B.C. after finding labels Petitioner created and distributed. ECF No. 1-1 at 2.  DHO Darden concluded the greater weight of the evidence supported the charge, 28 C.F.R. § 541.8(f), and the length of the call, B.C. only appearing on Petitioner's approved contact list, and her sending Petitioner money supports the finding.  This is enough to satisfy the "some evidence" standard. See Arreola-Albarran v. Ortiz, No. 17-4500, 2019 WL 3887552, at *3 (D.N.J. Aug. 19, 2019) (finding evidence to support possession charge even though phone was not found in petitioner's physical possession but phone numbers did not appear on any other inmates' approved contact list); Gonzalez v. Hollingsworth, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) ("While the cell phone in question was not found within petitioner's possession, courts have found that the presence on a cell phone

11

of a number which <u>only</u> appears on a particular inmate's approved phone list constitutes 'some evidence' that such inmate possessed the cell phone in question." (emphasis in original)).

Petitioner's assertion that DHO Darden was "unprofessional" also does not rise to the level of a due process violation. ECF No. 1-2 at 1. "'[T]he requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge.'" <u>Speight v. Minor</u>, 245 F. App'x 213, 217 (3d Cir. 2007) (per curiam) (quoting <u>Meyers v. Aldredge</u>, 492 F.2d 296, 306 (3d Cir. 1974)) (alteration in original). There is no evidence that DHO Darden had any involvement in the circumstances underlying the charge. Petitioner's "generalized allegation of bias" is not enough to show a denial of due process. <u>Alfred v. Ortiz</u>, No. 16-2723, 2017 WL 4167458, at *3 (D.N.J. Sept. 20, 2017). <u>See</u> <u>also</u> <u>Moles v. Holt</u>, 221 F. App'x 92, 95 (3d Cir. 2007) (holding that "hostility towards the defense" and "undue deference towards [officer's] incident report . . . fall short of evidencing the sort of egregious behavior that constitutes a due process violation").

The Court concludes that there is "some evidence" to support DHO Darden's decision and that DHO Darden was impartial.

12

The Court will deny Petitioner's request for relief on these grounds.

B.  Failure to Allow Evidence

Petitioner states that he submitted address labels with his contact information to the UDC with his statement as an alternative theory as to how B.C.'s number ended up in the phone.  ECF No. 1-1 at 2.  He asserts that the UDC failed to provide the labels to DHO Darden before the hearing.  ECF No. 1 at 7; ECF No. 7 at 8.  He argues this deprived him of evidence that he distributed his "families' contact information, i.e. phone number, mailing addresses, etc." to "a couple friends." ECF No. 7 at 7.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 556 (1974).  "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.

The harmless error analysis applies to cases concerning prison disciplinary proceedings. Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992) ("'If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a

13

constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.'") (quoting Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) (citation omitted)). Petitioner is not entitled to relief even if the UDC erred by failing to forward the labels to the DHO for consideration because the error was harmless. See Almanzar v. Hollingsworth, No. 15-6244, 2017 WL 4390264, at *4 (D.N.J. Oct. 2, 2017) (concluding any error in not reviewing camera footage or testing contraband for fingerprints was harmless).

Petitioner argues the labels were evidence that he distributed his contact information to other inmates in the prison. ECF No. 7 at 7-8. He then speculates that someone used the information on the labels to call B.C. Id. at 9. Petitioner has not provided the Court with copies of the labels, so it is not clear that B.C.'s information was in fact distributed. However, even if the Court accepts Petitioner's representations about the labels' contents and distribution as true, it does not necessarily mean that someone else called B.C. At best, the labels support Petitioner's assertion that other inmates had B.C.'s contact information; they do not make it more likely that someone else called B.C. and spoke to her for 7

14

minutes.  This is not an instance in which the DHO refused to consider exculpatory evidence during the hearing.  See Chavis v. Rowe, 643 F.2d 1281 (7th Cir. 1981) (holding inmate's right to present evidence was violated when committee did not disclose investigatory report containing exculpatory witness statements); Randolph v. Warden FCI Fort Dix, No. 20-4356, 2023 WL 22481, at *4 (D.N.J. Jan. 3, 2023) (remanding for new disciplinary hearing when DHO did not consider conflicting statements from the investigating officers).

Petitioner testified during the hearing, stating "I am not guilty, I passed my information to serval inmates in the dorm just in case we lost contact, I gave them my girlfriends information such as her name and number and address.  So either Loco or one of the brothers placed the contact in that phone.  I never possessed a phone."  ECF No. 6-1 at 6.  DHO Darden considered this statement and the typed statement but did not find Petitioner's claims to be credible after considering "the reporting staff members' eyewitness account of [Petitioner's] behavior," and his "observed/reported behavior/actions . . . ." Id.  Petitioner has failed to establish how the outcome of the hearing was likely to have been different if the DHO had reviewed the address labels.  See Wheeler v. Sims, 951 F.2d 796, 801 (7th Cir. 1992) (stating that oral testimony is superior to written statements in prison-disciplinary proceedings).

15

C.  Appellate Rights

Petitioner argues the BOP violated his right to appeal the UDC's recommendation to refer the charges to a DHO. ECF No. 1-2 at 1; ECF No. 7 at 9-11.  He also states that the BOP Regional Office and Central Office violated his due process rights "by filing for extensions and not responding to well past the due dates."  ECF No. 1 at 8.

The due process protections described in Wolff and Hill do not include administrative review over a DHO's determination. Prisoners do not have a constitutionally protected right to a prison grievance process.  Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007); Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005).  These claims are not cognizable under § 2241, but the Court notes the following.

The record establishes that Petitioner received a copy of the UDC's decision to refer the charges to a DHO on December 7, 2020.  ECF No. 6-1 at 9-10.  Wolff requires a minimum of 24 hours' notice before a hearing.  Wolff v. McDonnell, 418 U.S. 539, 564 (1974).  The hearing took place on December 14, 2020, ECF No. 6-1 at 4, so Petitioner had adequate notice of the DHO hearing.  The relevant BOP policy contemplates that appeals of UDC determinations will occur through the administrative remedy program.  ECF No. 7 at 50 (citing BOP Program Statement 5270.09, "Inmate Discipline Program," ch. 4 § 541.7(i) (eff. Aug. 1,

16

2011)). Petitioner could have objected to the referral in between the December 7 UDC referral and the December 14 hearing but did not. However, Petitioner did include these objections in his administrative appeal following the DHO hearing. See ECF No. 6-2 at 16.

Petitioner's arguments regarding extensions by the BOP Regional and Central Offices would impact whether he exhausted his administrative remedies before filing this § 2241 petition, but Respondent concedes Petitioner fully exhausted the administrative remedy process. See ECF No. 6 at 12. The BOP Regional Office and Central Office considered each of Petitioner's arguments and rejected them on the merits. None of Petitioner's arguments rise to the level of a due process violation warranting relief pursuant to § 2241.

D. Sanctions

Petitioner argues that the disciplinary sanctions were imposed before the appeals process was completed. ECF No. 1 at 7. He also states the 365-day loss of telephone privileges violated the CARES Act. Id.

Prohibited acts are categorized according to the severity of the conduct. Code Level 100s are deemed "Greatest Severity Level Prohibited Acts." 28 C.F.R. § 541.3. The regulations authorize the loss of up to 41 days of time credits for each prohibited act. See 28 C.F.R. § 541.3; see also Shelton v.

17

Jordan, 613 F. App'x 134, 135 (3d Cir. 2015).  There is no support for Petitioner's assertion that the BOP must wait for the conclusion of the appeals process before carrying out the sanctions.

Petitioner also asserts that DHO Darden incorrectly stated that he had a disciplinary history.  ECF No. 1 at 30.  "[T]his is Mr. Moore's first Incident Report."  Id.  As such, Petitioner argues that he should not have received the full 41-day sanction.  Id.  Respondent has produced Petitioner's disciplinary record showing his prior BOP disciplinary sanctions.  ECF No. 6-2 at 22-23.  In his reply, Petitioner prevaricates and claims that he was "speaking to his current term of imprisonments which commenced in February of 2014."  ECF No. 7 at 10.  "[] Petitioner has not had a greater severity infraction within a 24 month period, therefore the Petitioner should not have been subjected to harsher sanctions."  Id. at 10-11.  This is not persuasive, and DHO Darden did not impose any of the additional available sanctions for repeated prohibited acts in any event.  See 28 C.F.R. § 541.3 (Table 2); ECF No. 6-1 at 7 (stating in DHO report that future disciplinary charges may result in the application of "significant progressive sanctions").

"While the Due Process Clause protects against the revocation of good-time, it does not provide the same level of

protection against the imposition of other forms of discipline." Reynolds v. Williamson, 197 F. App'x 196, 198 (3d Cir. 2006) (per curiam).  Petitioner's claim that the loss of telephone privileges violated the CARES Act "cannot be challenged under § 2241 because in no manner do they affect good time credits, and thus they have no impact on the fact or length of his sentence or confinement."  Id. at 199 (citing Leamer v. Fauver, 288 F.3d 532, 540-42 (3d Cir. 2002)).  See also McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 85 n.1 (3d Cir. 2015) ("To the extent McCarthy challenges punishment that did not result in the loss of prison credit, those claims do not sound in habeas."). The Court does not have jurisdiction to address this claim under § 2241.

**IV. CONCLUSION**

For the foregoing reasons, the Court will deny Petitioner's § 2241 habeas petition.

An appropriate order will be entered.


Dated: February 29, 2024           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.